IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARCUS ALLEN MCFADDEN,  *

Plaintiff  *

v  *  Civil Action No. ELH-17-2582

CO. S. BARTON,  *
CO II D. HOFFMAN,
CO II S. BOGGS,  *

Defendants  *
***

## MEMORANDUM OPINION

Plaintiff Marcus Allen McFadden, who is self represented, is a state inmate incarcerated at North Branch Correctional Institution. He filed suit pursuant to 42 U.S.C. §1983, claiming that during the time he was incarcerated at the Maryland Correctional Institution-Hagerstown (MCI-H), defendants used excessive force against him and deprived him of adequate medical care, in violation of his rights under the Eighth Amendment.[1] ECF 1. He also asserts that institutional procedures were not followed. *Id*. Defendants, Correctional Officers Scott Barton, Shane Boggs, and David Hoffman,[2] have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF 12), along with a legal memorandum (ECF 12-1) (collectively, the "Motion"). In support of the Motion, defendants have submitted declarations (ECF 12-4, ECF 12-5, ECF 12-6, ECF 12-8, & ECF 12-9), and verified records, ECF 12-3 & ECF 12-7, including

---

[1] McFadden also brings his claims under the Fourteenth Amendment. As McFadden was serving a sentence pursuant to a State conviction at the time of the incident at issue, his excessive force and medical claims are properly considered under the Eighth Amendment.

[2] The Clerk shall amend the docket to reflect defendants' full names.

medical records. ECF 12-7.[3] McFadden has filed an opposition (ECF 17), with exhibits. ECF 17-1. Defendants did not file a reply.

Upon review of the pleadings, exhibits, and applicable law, I find that no hearing is necessary to resolve the Motion. *See* Local Rule 105.6 (D. Md. 2016). For the reasons that follow, defendants' Motion, construed as a motion for summary judgment, shall be granted.

## I. FACTUAL BACKGROUND

### A. McFadden's Allegations

McFadden alleges that he was assaulted by defendants on March 2, 2017. On that day, inmates in the disciplinary segregation unit where McFadden was housed were being given the opportunity to take their showers. McFadden asserts that he was not provided a shower because he "allegedly" covered his cell window McFadden claims that he put his "arm on the door slot and asked to speak to a[n] OIC [officer in charge] or shift supervisor before closing [the] slot." ECF 1 at 2-3. Officer Hoffman then directed McFadden to close the slot and told him that he was not going to see anybody. *Id.* McFadden acknowledges that he "continue[d] to have [his] arm on the slot." *Id.* at 3. According to McFadden, Hoffman "[re]peatedly took his right knee and slammed [plaintiff's] arms in the slot and then released a burst of mace . . . ." *Id.* McFadden asked to see a shift supervisor.

Officer Barton arrived. The officers radioed the control center to open the cell occupied by McFadden and his cellmate, Johnny Sinkler. McFadden alleges that Barton entered the cell, "releasing vicious blows to the left side of [his] face." *Id.* Meanwhile, Hoffman restrained Sinkler. Officer Boggs arrived to assist Barton "and released punches to [plaintiff's] mouth which caused bleeding." *Id.* McFadden alleges that while he lay face down in cuffs, he was

---

[3] References to docket entries reflect their electronic pagination.

threatened and racial slurs were made. As Barton and Boggs removed McFadden from his cell, Hoffman "released a vicious heavy knee to the whole left side of [plaintiff's] face, which caused bruising and nerve damage to [his] left eye." ECF 1 at 3. Afterwards, McFadden was taken to speak to Sergeant Khan and Lieutenant Whiteside.[4] McFadden alleges that during this conversation he was told that if he sought medical attention, he would receive a rule infraction. *Id.* Further, they told McFadden that "'Sgt. Khan made a mistake for opening [plaintiff's] cell and they had to come up with a good lie to saves [sic] their assess [sic].'" *Id.*; *see also* ECF 17 at 4. Lt. Whiteside promised McFadden he would not be charged with assaulting the officers. *Id.*

McFadden was escorted to the medical unit and photographs were taken. *Id.* Medical personnel evaluated plaintiff for an injury to his left eye and a "busted mouth." *Id.*[5] McFadden claims he did not receive proper treatment for his left eye injury. He alleges that his vision is blurred and he suffers constant eye pain. *Id.* at 4.

McFadden was served with notice of rule infractions for assaulting the officers on March 2, 2017, and for covering his cell window. *Id.* at 3-4. He avers that proper procedures were not followed during the incident. *Id.* Specifically, he asserts that before his cell door was opened, a shift supervisor should have been called and the incident should have been recorded. *Id.* McFadden requests monetary damages against each defendant as redress. *Id.*

**B. Defendants' Response**

Defendants Boggs, Hoffman, and Barton deny McFadden's allegations in their declarations. ECF 12-4 (Boggs); ECF 12-5 (Hoffman); ECF 12-6 (Barton). They also deny that any chemical agents were used against McFadden before or during the incident on March 2,

---

[4] Neither officer is named as a defendant.

[5] McFadden alleges in his opposition that he sustained a "mild contusion" to his mouth. ECF 17 at 4.

2017. *Id*. They also deny making racial slurs. *Id.* Further, defendants state they did not observe other officers use a chemical agent on McFadden or make racial slurs. *Id.* And, defendants deny interfering with or delaying McFadden's medical care. *Id.* Hoffman states that he was not involved in the physical altercation with McFadden because his actions focused on restraining Sinkler. ECF 7-5.

Defendants assert that "the contents of the Use of Force Incident Report and the Notice of Inmate Rule Violation which are dated March 2, 2017 about events surrounding" their contact with McFadden are "true and accurate." ECF 12-4, ECF 12-5, ECF 12-6. Defendants have also filed verified copies of the Serious Incident Report, ECF 12-3 at 5-7; Use of Force Report, ECF 12-3 at 8-22; and Notice of Inmate Disciplinary Hearing, ECF 12-3 at 23-28. Several of the reports were made soon after the incident.

Much of the information below is gleaned from the exhibits.

On the date in question, Barton and Hoffman offered showers to inmates on the segregation tier. At approximately 9:20 a.m., they approached McFadden's cell. Barton observed the cell door window was covered with paper. ECF 12-3 at 7 (Serious Incident Report of Todd Young); *id*. at 9 (Boggs' Narrative, Use of Force Report); *id.* at 11 (Investigative Report); *id.* at 12 (Boggs' Use of Force Incident Report); *id.* at 14 (Barton's Use of Force Report). Barton asked McFadden and Sinkler to remove the paper and inquired whether they wanted showers. Neither inmate responded. *Id.* at 7, 9, 11. Barton then informed McFadden and Sinkler that covering the window jeopardized their safety and institutional security and that refusal to remove the cover would result in an adjustment report. *Id.* Nevertheless, the inmates did not remove the window covering. Barton then ordered the inmates to remove the paper from the window.

4

*Id.* Again, there was no response. Barton called on his radio to open the cell door to check on the inmates' welfare. *Id.*

Once the door opened, McFadden attempted to step out of the cell, but Barton ordered him to step back into the cell. Barton extended his arm to prevent McFadden from exiting. McFadden grabbed Barton's arm, pulled him into the cell, and "threw several closed fist punches" to Barton's face. *Id.* Barton reported that McFadden landed two punches on Barton's left check, directly below his eye, causing swelling and redness for approximately one hour. *Id.* at 14.

Officer Boggs "heard a commotion" and went to the scene. ECF 12-3 at 12. Boggs reported that McFadden threw punches to his face, as well. *Id.* Hoffman attempted to handcuff Sinkler, who initially resisted and then complied. *Id.* at 11. McFadden was placed on the ground to gain control. *Id.* Barton handcuffed McFadden, *id.*, and other officers escorted McFadden from the area. *Id.* at 11.

Officer R. Sartin promptly escorted plaintiff to see medical personnel. ECF 12-9 at 2. Sartin photographed McFadden at approximately 9:40 a.m. ECF 12-3 at 18. At approximately 9:30 a.m., Officer R. Wigfield, III photographed Barton, Boggs, and Hoffman. *Id*. at 20-22.

Kim Morrison, R.N., evaluated McFadden after the incident, at approximately 10:12 a.m. ECF 12-7 at 2. Morrison observed that McFadden walked without assistance or signs of distress. Morrison observed a bruise on McFadden's upper left cheek near his eye, measuring approximately 3 cm x 2 cm. McFadden denied having other concerns. *Id*. McFadden offered no statement about the assault. *Id.*

Lieutenant Brian Whiteside avers in his Declaration (ECF 12-9) that he had a brief conversation with McFadden at approximately 9:30 a.m. on March 2, 2017, to find out his view

5

of the incident. *Id.* at 1. Whiteside denies telling McFadden that "he would only receive an infraction if he sought medical attention." *Id.* at 2. Further, Whiteside denies that he told McFadden that Barton, Boggs, and Hoffman had to lie to cover up their actions. *Id.* And, Whiteside denies offering to withhold assault charges against McFadden in exchange for McFadden's promise not to press charges against Barton, Boggs, and Hoffman. *Id.* Whiteside notes that he agreed with and approved the decision to charge McFadden with rule violations based on the incident of March 2, 2017. *Id*. Whiteside denies that he hindered or delayed McFadden's medical treatment. *Id.*

McFadden and Sinkler declined to be interviewed about the incident or to provide statements. ECF 12-3 at 11. Following a Use of Force Investigation, the investigator, Cheryl Williams, submitted a summary to Ronald Brezler, Chief of Security, concluding that the force used was "justified and applied in good faith to gain control of the situation and to keep the incident from escalating . . . ." ECF 12-3 at 11.

On March 3, 2017, Ronald B. Brezler, MCI-H Chief of Security, determined after reviewing the Serious Incident and Use of Force Reports completed after the incident of March 2, 2017, that the amount of force accorded "with established directives and policies. However, the decision to enter the cell was made without notifying a supervisor or with the appropriate amount of back-up." ECF 12-3 at 4; *see id.* at 9. The staff involved was verbally counseled and a safer alternative action was discussed. *Id*. at 9.

Also on March 3, 2017, McFadden was transferred to Western Correctional Institution (WCI). ECF 12-3 at 2. Dennis Martin, R.N., provided a wellness check on March 6, 2017. ECF 12-7 at 6. The medical record indicates no injuries were noted or reported during the wellness check. *Id.*

6

And, on March 3, 2017, McFadden was charged with violating institutional rules 100 (engaging in a disruptive act), 101 (assault or battery on staff), 400 (disobeying an order), and 408 (misuse, altering, tampering, or destroying State property or property of another). ECF 12-1 n. 2. On March 31, 2017, he pleaded guilty before Hearing Officer David Sipes to the violation of rules 101, 400, and 408. ECF 12-3 at 24-25. Sipes sanctioned McFadden with 365 days of segregation and revoked 730 days of good conduct credits. Sipes informed McFadden that the Warden could modify the sanctions imposed in light of McFadden's adjustment history, which included four prior rule violations for weapons infractions. *Id*. at 25-26.

### C. McFadden's Opposition

McFadden states the photographs taken of Barton just ten minutes after the incident contradict Barton's allegation that he suffered "swelling and redness" below his eye, lasting for approximately one hour. ECF 17 at 5; ECF 12-3 at 14. McFadden also notes that Boggs, who claimed that he was punched, evidenced no injury in his photographs. ECF 17 at 5; ECF 12-3 at 12.

## II. STANDARD OF REVIEW

Defendants' motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cty*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary

7

judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 Fed Appx. 220, 222 (4th Cir. 2016) (per curiam). But, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C Alan Wright & Arthur Miller, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165, 167.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc.,* 637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 Fed. Appx. 632, 638 (4th Cir. 2016); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the

grounds that more time was needed for discovery.' " *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 Fed. App'x 552, 561 (4th Cir. 2015).

To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.' " *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.,* 55 F.3d 943, 954 (4th Cir. 1995); *see Gordon v. CIGNA Corp.*, ___ F.3d ___, 2018 WL 2209305, at *10 (4th Cir. May 15, 2018); *Amirmokri v. Abraham,* 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 Fed. Appx. 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008). In addition, a Rule 56(d) motion may be denied if the opposing party had a reasonable opportunity to conduct discovery. *Hodgin v. UTC Fire & Security Americas Corp., Inc.*, 885 F.3d 243, 250 (4th Cir. 2018).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because " 'the failure to file an affidavit ... is itself sufficient grounds to reject a claim that the opportunity for

9

discovery was inadequate.' " *Harrod*s, 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit does not obligate a court to issue a summary judgment ruling that is obviously premature. And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere " 'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,' " the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id*. (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.' " *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 Fed.Appx. at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). "This is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 Fed. Appx. at 638.

McFadden was provided notice of defendants' Motion and an opportunity to file exhibits and declarations. ECF 13. He has filed an opposition to Defendants' Motion with exhibits.[6] He does not request discovery, nor is there any indication that additional materials would create a genuine issue of material fact. Thus, I am satisfied that it is appropriate to address defendants' Motion as one for summary judgment, as this will facilitate resolution of the case.

---

[6] McFadden did not file declarations.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Sharif v. United Airlines, Inc.,* 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

Notably, "[a] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.' " *Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). The court should "view the evidence in the light most favorable to ... the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 644-45 (4th Cir. 2002); *see Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

Moreover, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.

The court is mindful that McFadden is a self-represented litigant, and therefore, his complaint must be liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett,* 477 U.S. 317, 323–24 (1986)).

In sum, to counter a motion for summary judgment, there must be a genuine dispute as to material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 585–86 (1986). "A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law." *Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).

### III. DISCUSSION

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *DeLonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). The protection conferred by the Eighth Amendment imposes on prison officials an affirmative "obligation to take reasonable measures to guarantee the safety of ... inmates." *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986); *see Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016).

Notably, "[n]ot all Eighth Amendment violations are the same: some constitute 'deliberate indifference,' while others constitute 'excessive force.'" *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Whitley v. Albers*, 475 U.S. 312, 319–21 (1986)). In general, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, and failure to render medical assistance. *See Farmer*, 511 U.S. at 834; *Thompson*, 878 F.3d at 97. The deliberate indifference standard consists of a two-pronged test: "(1) the prisoner must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety." *Thompson*, 878 F.3d at 97-98 (quoting *Farmer*, 511 U.S. at 834, 837-38). Conversely, in excessive force cases, "courts must determine 'whether force was applied in a good-faith effort

to maintain or restore discipline, or maliciously and sadistically to cause harm.' " *Thompson*, 878 F.3d at 98 (quoting *Hudson v. McMillian*, 503 U.S. 1, at 6-7 (1992)).

### A. Excessive Force Claim

A convicted inmate's claim of the use of excessive physical force by an officer is analyzed in the context of the Eighth Amendment's prohibition against cruel and unusual punishment. *See Whitley*, 475 U.S. at 319–21; *see also Hudson*, 503 U.S. at 7–9. An Eighth Amendment analysis asks whether the prison officials "acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). An inmate must meet a heavy burden to satisfy the subjective component—that correctional officers applied force "maliciously and sadistically for the very purpose of causing harm," rather than "in a good-faith effort to maintain or restore discipline." *Whitley*, 475 U.S. at 320–21 (internal quotation marks omitted).

When evaluating whether a defendant's actions satisfy the subjective component, the court examines "the need for the application of force, the relationship between the need and the amount of force that was used," the extent of the injury, the threat reasonably perceived by the responsible official, "and any efforts made to temper the severity of a forceful response." *Whitley*, 475 U.S. at 320–21. Here, defendants' verified exhibits and declarations demonstrate that McFadden's cell window was covered. McFadden does not deny that Officer Barton asked him three times to remove the cover, without response. The second request was accompanied by an explanation that covering the window jeopardized inmate and institutional safety. And, Barton's third request was issued as a direct order. Of import, McFadden does not deny that his cell window was covered at the time in issue. Nor does he dispute that he escalated the situation

by attempting to leave his cell once the cell door opened, or that he attempted to pull Barton into the cell.

The record shows defendants acted to restore safety by restraining McFadden and his cellmate. Defendants uniformly deny that a chemical agent was administered into the cell before the door was opened. No use of pepper spray or chemical agents was referenced in the Use of Force Report. ECF 12-3 at 8. Moreover, the medical record makes no mention of exposure to mace or other chemical irritant; it notes McFadden walked without assistance or signs of distress, and he made no mention of other medical concerns. Nor was chemical residue evident on McFadden or Sinkler's clothing or body, according to the photographs in the record. ECF 12-3 at 18-19. In his opposition, McFadden offers no evidence to the contrary.

Once handcuffed, McFadden was taken promptly to the medical unit for evaluation, thereby tempering any effects from use of force. The medical report noted a bruise under McFadden's eye. The photographs of McFadden, taken shortly after the incident, show a swollen hand. ECF 12-3 at 18. But, McFadden does not dispute that he punched the officers. Moreover, there are no indications of apparent bruising, left eye injury, or a "busted mouth." *Id.* McFadden accurately observes that the officers' photographs evidence no apparent facial injury to them.

Viewing the information in the light most favorable to McFadden, there is no genuine dispute as to material fact as to whether defendants applied force maliciously and sadistically to harm plaintiff or, instead, to restore discipline. *Whitley*, 475 U.S. 320-21. Absent a genuine issue of material fact, defendants are entitled to summary judgment as to this claim.

To be sure, defendants acknowledge institutional protocols were not followed when they opened the cell door without first calling for a supervisor or with the appropriate amount of back-

up. However, to the extent McFadden intends to raise a due process claim based on failure to follow institutional policies, procedures, or regulations, the claim is insufficient as a matter of law to support a claim for relief under § 1983. *See Riccio v. City of Fairfax, Va.,* 907 F.2d 1459, 1469 (4th Cir. 1990) (violations of a procedure not required by the Constitution do not state a due process claim); *Keeler v. Pea*, 782 F.Supp. 42, 44 (D. S.C. 1992) (observing that § 1983 protects against constitutional violations, not violations of prison rules).

Defendants' failure to comply with institutional policies and procedures does not provide grounds for a due process violation claim. *See Weller v. Dept. of Social Services,* 901 F.2d 387 (4th Cir.1990); *see also Myers v. Kelvenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (stating failure to follow a prison directive or regulation does not give rise to a federal claim, if constitutional minima are met). To the extent McFadden has raised a claim premised on defendants' failure to follow institutional policy, defendants are entitled to summary judgment as a matter of law.

**B. Medical Treatment**

In order to state an Eighth Amendment claim for denial of adequate medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. at 106; *see also Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). A "'serious ... medical need'" is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko*, 535 F.3d at 241 (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

As noted, the Fourth Circuit recently observed that "not all Eighth Amendment violations are the same: some constitute 'deliberate indifference,' while others constitute 'excessive

force.'" *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Whitley*, 475 U.S. 319-20). In general, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, and failure to render medical assistance. *See Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Thompson*, 878 F.3d at 97. The deliberate indifference standard consists of a two-pronged test: "(1) the prisoner must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety." *Thompson*, 878 F.3d at 97-98 (quoting *Farmer*, 511 U.S. at 834, 837-38). The Fourth Circuit has characterized the applicable standard as an "exacting" one. *Lightsey*, 775 F.3d at 178.

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and, subjectively, that the prison staff was aware of the need for medical attention but failed either to provide it or to ensure that the needed care was available. *See Farmer*, 511 U.S. 837. Proof of an objectively serious medical condition, however, does not end the inquiry. The subjective component requires a determination as to whether the defendant acted with "a sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *see Farmer*, 511 U.S. at 839-40. As the *King* Court reiterated, 825 F. 3d at 219: "The requisite state of mind is thus 'one of deliberate indifference to inmate health or safety.'" (Citation omitted). Although this "'entails more than mere negligence ... it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Id.* (quoting *Farmer*, 511 U.S. at 835).

In order "[t]o show an Eighth Amendment violation, it is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the

17

inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Lightsey*, 775 F.3d at 178. In other words, deliberate indifference requires a showing that the defendant disregarded a substantial risk of harm to the prisoner. *Young v. City of Mt. Ranier*, 238 F.3d 567, 575-76 (4th Cir. 2001); *see Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk.").

As the *Farmer* Court explained, reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." Thus, "[a]ctual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). But, if a risk is obvious, a prison official "cannot hide behind an excuse that he was unaware of a risk, no matter how obvious." *Brice*, 58 F.3d at 105.

Deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Lightsey*, 755 F.3d at 178; *see Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it ... [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences ... To lower this threshold would thrust federal courts into the daily practices of local police departments."). Therefore, mere negligence or malpractice does not rise

to a constitutional level. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986) (citing *Estelle v. Gamble, supra*, 429 U.S. at 106). Moreover, in a case involving a claim of deliberate indifference to a serious medical need, the inmate must show a "significant injury." *Danser v. Stansberry*, 772 F.3d 340, 346 n.8 (4th Cir. 2014).

Although the deliberate indifference standard "'entails more than mere negligence . . . it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *King*, 825 F.3d at 219 (quoting *Farmer*, 511 U.S. at 835). A plaintiff can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 842).

Even if the requisite subjective knowledge is established, an official may still avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)).

Here, McFadden generally alleges that he was not provided adequate medical care for his eye injury. However, McFadden does not specifically fault Barton, Hoffman, or Boggs for failing to provide him with medical care. As previously noted, defendants deny hindering or delaying McFadden's access to medical care. Further, McFadden did not complain to medical

19

providers of an eye injury when he was examined on March 2, 2017, after the incident, or on March 6, 2017, after his transfer to WCI. McFadden provides no facts to suggest defendants were aware of a serious medical need, and then failed either to provide it or to ensure the needed care was made available. There is no genuine issue of material fact, and defendants are entitled to summary judgment as to this claim.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF 12), construed as a Motion for Summary Judgment, will be granted in a separate Order to follow.

May 29, 2018　　　　　　　　　　　　　/s/
Date　　　　　　　　　　　　　　　　Ellen L. Hollander
　　　　　　　　　　　　　　　　　　United States District Judge